UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OSCAR GONZALEZ,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH HILTON, DOUGLAS GROUT, WILLIAM KOKOCINSKI, and STEPHAN P. MCKAY II, in their individual capacities,<br><br>Defendants. | Civil Action No.: 15-40171 |

# COMPLAINT

## INTRODUCTION

1. This is a civil rights action against Trooper Joseph Hilton and three other members of the Massachusetts State Police for the use of excessive and unnecessary force against Plaintiff Oscar Gonzalez. On March 8, 2014, Defendant Hilton attacked Dr. Gonzalez, a dentist from Connecticut, during a traffic stop on the Massachusetts Turnpike. Hilton had stopped Dr. Gonzalez for speeding. During the stop, Hilton told Dr. Gonzalez he was going to tow his car due to an unpaid late fee from a 1998 traffic ticket. Hilton began to berate Dr. Gonzalez using derogatory and racial epithets. When Dr. Gonzalez told Hilton that their conversation was being recorded, Defendant Hilton shoved Dr. Gonzalez, pushed him onto the back of his car, and began to hit him.

2. Defendants Grout, Kokocinski, and McKay arrived at the scene and joined in the use of excessive and unnecessary force. During the attack, Defendants hit Dr. Gonzalez with a baton, choked him, and sprayed his genitals with pepper spray. To cover up for Defendants' collective misconduct, Defendant Hilton caused several baseless criminal charges to be brought against Dr. Gonzalez. He was acquitted of all charges at trial.

**JURISDICTION**

3. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Title 28 U.S.C. § 1331 and § 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. § 1367 provides supplemental jurisdiction over state law claims.

**PARTIES**

4. Plaintiff Oscar Gonzalez is a citizen of the United States and a resident of the State of Connecticut.

5. Defendants Joseph Hilton, Douglas Grout, William Kokocinski, and Stephan P. McKay II were at all times relevant to this complaint duly appointed police officers of the Commonwealth of Massachusetts Department of State Police. Their actions alleged in this complaint were taken under color of the laws of the Commonwealth of Massachusetts. They are sued in their individual capacities.

**FACTS**

6. On Saturday, March 8, 2014, Plaintiff Oscar Gonzalez was driving his 17-year-old son to Chelsea, Massachusetts, for a paintball game.

7. As Dr. Gonzalez drove eastbound along the Massachusetts Turnpike near the Auburn/Millbury town line, he noticed a State Police cruiser behind him. When the police car activated its emergency lights, Dr. Gonzalez pulled over to the shoulder and stopped.

8. Defendant Joseph Hilton, a Massachusetts State Police trooper, had been on his way to Boston for a paid detail when he stopped Dr. Gonzalez's car. Hilton approached the driver-side window of Dr. Gonzalez's car. Dr. Gonzalez asked Defendant Hilton why he had been stopped; Hilton told Dr. Gonzalez that he had been speeding.

9. Defendant Hilton asked for Dr. Gonzalez to provide his driver's license; Dr. Gonzalez did so and Hilton returned to his car.

10. A few minutes later, Hilton returned to Dr. Gonzalez's window. His demeanor had changed; he appeared more aggressive and confrontational. Hilton told Dr. Gonzalez that his right to operate a motor vehicle in Massachusetts had been suspended for failing to pay a late fee on a traffic ticket from 1998.

11. Defendant Hilton reached in through the open driver's window and took Dr. Gonzalez's keys from the ignition. Hilton told Dr. Gonzalez he was going to have the car towed. Hilton then returned to his police car.

12. Dr. Gonzalez was surprised and concerned. Hilton seemed agitated and upset. Dr. Gonzalez did not recall failing to pay a late fee 16 years earlier. He did not understand why the police would tow the car when Dr. Gonzalez's son, who was sitting in the passenger seat, had a valid driver's license and could have driven the car.

13. With his cell phone, Dr. Gonzalez called a nearby State Police barracks to inquire whether Defendant Hilton was permitted to tow his car in these circumstances and to report his concerns about Defendant Hilton's agitated demeanor.

14. Shortly after Dr. Gonzalez was able to reach someone at the barracks, Defendant Hilton returned to Dr. Gonzalez's window. Hilton pounded his fist against the windshield and yelled at Dr. Gonzalez to "get the [f---] off the phone."

15. Defendant Hilton ordered Dr. Gonzalez to get out of the car.

16. Dr. Gonzalez told his son to stay in the car and to record the trooper with his cell phone.

17. Dr. Gonzalez got out of the car and walked to the rear with Defendant Hilton.

3

18. At the back of the car, Defendant Hilton started to berate Dr. Gonzalez. Hilton said, "it's because of dicks like you—"

19. Dr. Gonzalez interrupted Defendant Hilton, saying, "excuse me?"

20. Defendant Hilton then said, "it's because of dicks and dirty spics like you—"

21. Dr. Gonzalez again interrupted Defendant Hilton to tell the officer that their conversation was being recorded.

22. In response, Defendant Hilton shoved Dr. Gonzalez against the car. He began hitting and kneeing Dr. Gonzalez. Defendant Hilton threw Dr. Gonzalez to the ground and continued hitting him.

23. Defendant Hilton sprayed Dr. Gonzalez in the face with at least three bursts of pepper spray. He delivered repeated blows to Dr. Gonzalez's head and hands with his portable radio. As he hit Dr. Gonzalez, Defendant Hilton shouted, among other things, "you [f---ing a--hole]" and "I'm going to kill you."

24. Dr. Gonzalez pleaded for mercy. He begged the officer to stop hitting him. He shouted repeatedly that he was not resisting the officer. At trial Defendant Hilton described this, testifying that Dr. Gonzalez was "screaming like a little girl."

25. Dr. Gonzalez's son called 911 from inside the car. He frantically asked the dispatcher to send help for his father. He described Defendant Hilton's actions, narrating as the officer hit his father in the head and began choking him.

26. Defendants Grout, Kokocinski, and McKay arrived at the scene. Dr. Gonzalez initially felt relief, believing that the beating would stop in the presence of additional officers. It did not.

27. Despite a duty and opportunity to stop Defendant Hilton from continuing to use unreasonable and unnecessary force, Defendants Grout, Kokocinski, and McKay instead joined in.

Defendant Grout began hitting Dr. Gonzalez with a baton. One of the officers choked Dr. Gonzalez.

28. While Dr. Gonzalez was handcuffed with his face and chest on the pavement he saw the boot of a state trooper walk by him. Then someone raised his pants from the back and he felt his buttocks and genital area being sprayed with pepper spray. Defendants Grout, Kokocinski, and McKay were acting jointly and in concert with Defendant Hilton during the assault on Dr. Gonzalez.

29. Defendants Grout, Kokocinski and Hilton filed use of force reports indicating they used OC, or oleoresin capsicum, commonly referred to as pepper spray.

30. No reasonable police officer would spray a person's buttocks or genitals with pepper spray. Doing so serves no legitimate law enforcement purpose. This use of force was designed to cause Dr. Gonzalez to suffer extreme pain, humiliation, and degradation.

31. Dr. Gonzalez was eventually handcuffed and arrested. While lying on the ground in handcuffs, he saw one of the Defendants taking pictures of his bloodied face with a cell phone.

32. Dr. Gonzalez was taken from the scene by ambulance to UMass Memorial Medical Center. He was treated for, among other things, lacerations to his scalp, forehead, and face. He had bruising and contusions over much of his body. He had a broken tooth and bleeding in his ear canal. He had reactive erythema—a rash and inflammation of the skin—on his genitals and thighs where he had been pepper sprayed. An x-ray later revealed that one of Dr. Gonzalez's ribs had been fractured.

33. After the incident Dr. Gonzalez began to have shoulder pain. Eventually an MRI showed that he had a torn ligament in his right shoulder. While he is able to continue to work at present, it is likely that this injury will eventually require surgery.

34. After being treated at the hospital, Dr. Gonzalez was taken to a State Police barracks where he was held in custody for several hours. He was eventually released from custody after posting bail.

35. Defendant Hilton caused Dr. Gonzalez to be charged with several crimes, including assault and battery on a police officer, resisting arrest, disorderly conduct, and operating with a suspended license. Defendant Hilton also cited Dr. Gonzalez for speeding.

36. Defendant Hilton wrote a police report about the incident. In the report, Hilton falsely claimed that Dr. Gonzalez had "chest bumped" him upon hearing that his car would be towed, resulting in a "violent struggle." Defendant Hilton knowingly filed a false police report in an attempt to justify and cover up his unreasonable and excessive use of force against Dr. Gonzalez.

37. Defendants Grout and Kokocinski submitted use of force reports about the incident. Defendant Grout admitted to using his baton, but denied using it to hit Dr. Gonzalez. Both Defendant Grout and Defendant Kokocinski admitted to using pepper spray, but omitted that Defendants had sprayed Dr. Gonzalez's genitals and buttocks. Both reports omitted that Defendants had choked Dr. Gonzalez. Defendants Grout and Kokocinski omitted this material information from their reports in order to conceal the unreasonable and unnecessary force that Defendants collectively used against Dr. Gonzalez.

38. The criminal charges against Dr. Gonzalez remained pending for nearly 18 months. While the charges were pending, Dr. Gonzalez was required to attend numerous hearings in Worcester District Court. In order to attend each hearing, Dr. Gonzalez had to close his dental office, cancel patient appointments, and travel to Massachusetts.

39. At a bench trial on August 17, 2015, Defendant Hilton failed to testify truthfully regarding his assault of Dr. Gonzalez. Defendant Hilton testified that Dr. Gonzalez had been the aggressor. He claimed that he never struck Dr. Gonzalez in the head or face.

40. The trial judge acquitted Dr. Gonzalez of all criminal charges. After announcing his verdict, the judge requested that the District Attorney's office prosecute Defendant Hilton criminally for his misconduct. "He should be charged with a crime," the judge said.

41. In addition to the physical injuries described above, Dr. Gonzalez suffered emotional and financial injuries as a result of Defendants' misconduct. Although he knew he had done nothing wrong, Dr. Gonzalez feared that he would be convicted of the baseless criminal charges Defendant Hilton had brought against him. Dr. Gonzalez was deeply embarrassed at being arrested and worried about how this incident would affect his professional reputation and his career. Dr. Gonzalez suffered financial injuries when he was required to repeatedly close his dental office and cancel patient appointments in order to attend court hearings and defend himself against baseless criminal charges.

**COUNT I**    **42 U.S.C. § 1983 Claim Against All Defendants**

42. The above paragraphs are incorporated by reference.

43. Defendants Hilton, Grout, Kokocinski, and McKay, acting under of color of law, used unreasonable force against Plaintiff Oscar Gonzalez, depriving him of his clearly established right to be free from the use of unreasonable force by police officers under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment.

44. Defendants Hilton, Grout, Kokocinski, and McKay acted jointly and in concert.

45. Defendants Hilton, Grout, Kokocinski, and McKay acted with reckless disregard for Plaintiff's constitutional rights.

46. As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**COUNT II**    **Tort of Assault and Battery Against All Defendants**

47. The above paragraphs are incorporated by reference.

48.     Defendants Hilton, Grout, Kokocinski, and McKay committed the common law tort of assault and battery when they assaulted Plaintiff Oscar Gonzalez without legal justification. Defendants' use of force was unreasonable and unprivileged.

49.     As a direct and proximate result of Defendants' actions, Plaintiff suffered the damages described above.

**COUNT III   Tort of Malicious Prosecution Against Defendant Hilton**

50.     The above paragraphs are incorporated by reference.

51.     Defendant Hilton caused criminal charges to be brought against Plaintiff Oscar Gonzalez without probable cause and with malice. The criminal charges terminated in Plaintiff's favor when he was acquitted at trial.

52.     As a direct and proximate result of Defendant Hilton's actions, Plaintiff suffered the damages described above.

**WHEREFORE**, Plaintiff requests that this Court:

1.     Award compensatory damages;

2.     Award punitive damages against Defendants Hilton, Grout, Kokocinski, and McKay;

3.     Award the costs of this action including reasonable attorney's fees; and,

4.     Award such other further relief as this Court deems appropriate and necessary.

**JURY DEMAND**

A trial by jury is hereby demanded.

RESPECTFULLY SUBMITTED,

For Plaintiff Oscar Gonzalez,
By his attorneys,

/s/ Howard Friedman
Howard Friedman, BBO #180080
Drew Glassroth, BBO #681725
**Law Offices of Howard Friedman, P.C.**
90 Canal Street, Fifth floor
Boston, MA 02114-2022
617-742-4100
hfriedman@civil-rights-law.com
dglassroth@civil-rights-law.com

Dated: December 24, 2015

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a true copy of the above document to be served upon the attorney of record for all parties via CM/ECF.

Date:  December 24, 2015   /s/ Howard Friedman
                           Howard Friedman